UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| NORTHERN STATES POWER<br>ST. PAUL CREDIT UNION,<br><br>Plaintiff,<br><br>v.<br><br>CUMIS INSURANCE SOCIETY, INC.<br>a/k/a *CUNA Mutual Insurance Agency, Inc.*,<br><br>Defendant. | Civil No. 13-0385 (JRT/LIB)<br>Civil No. 13-0387 (JRT/LIB)<br><br>**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS FOR JUDGMENT ON THE PLEADINGS** |

Amanda E. Prutzman, **ECKBERG, LAMMERS, BRIGGS, WOLFF & VIERLING, PLLP**, 1809 Northwestern Avenue, Stillwater, MN  55082, for plaintiff.

Bethany K. Culp and James S. Fuller, **HINSHAW & CULBERTSON LLP**, 333 South Seventh Street, Suite 2000, Minneapolis, MN  55402, for defendant.

These are two related insurance coverage disputes in which plaintiff Northern States Power St. Paul Credit Union ("NSP") seeks coverage under the "Mortgage Recording Coverage" portion of an insurance policy issued by defendant CUMIS Insurance Society, Inc. ("CUMIS").  When CUMIS denied coverage, NSP brought the present actions seeking a declaratory judgment and bringing claims for breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, equitable estoppel, and unjust enrichment.  Presently before the Court are CUMIS's motions for judgment on the pleadings on all of NSP's claims.  Because the

Court finds that NSP's contractual claims fail as a matter of law and that there is no basis for equitable relief, the Court will grant CUMIS's motions and dismiss NSP's claims with prejudice.

## BACKGROUND

NSP commenced these two related insurance coverage actions against CUMIS in Minnesota State court in January 2013. (*See* Civ. No. 13-385 ("Parks"), Notice of Removal, Ex. 1 ("Parks Compl."), Feb. 15, 2013, Docket No. 1; Civ. No. 13-387 ("Schantzen"), Notice of Removal, Ex. 1 ("Schantzen Compl."), Feb. 15, 2013, Docket No. 1.) On February 15, 2013, CUMIS removed the actions to this Court.

**I.    THE PARKS LOAN**

In May 2006, Jason Parks, a member of NSP, applied for a $153,261.50 loan from NSP, offering a second mortgage on his California home as collateral. (Parks Compl. ¶¶ 6-7, Ex. A.) At no point in the application process did Parks inform NSP that his property was encumbered by a $62,879.30 federal tax lien that was filed on May 30, 2006. (*Id.* ¶¶ 11, 14.) NSP's loan officer had difficulty obtaining a full Owner and Encumbrance Report on the out-of-state property. (*Id.* ¶ 9.) Nonetheless, because of Parks' reported income, NSP's then-president approved the loan without a full Owner and Encumbrance Report, which violated NSP's standard operating procedure. (*Id.* ¶¶ 15, 17.) NSP alleges that it would not have approved the loan if it had known that the federal tax lien had priority over the second mortgage it received as collateral for the loan. (*Id.* ¶¶ 19, 22.) Parks became delinquent on his loan on February 25, 2008. (*Id.*

¶ 21.)  NSP sent a Notice of Loss to CUMIS on November 7, 2011, and CUMIS denied the claim.  (*Id.* ¶¶ 22, 26.)

## II.   THE SCHANTZEN LOAN

In April 2005, Mary Schantzen, a member of NSP, applied for a $30,000 loan from NSP, offering a second mortgage on her home as collateral.  (Schantzen Compl. ¶¶ 6-7.)  Schantzen did not disclose a marital lien against her property in her loan application, but the marital lien did appear on the title work NSP obtained from an outside company, CU Title Services, Inc.  (*Id.* ¶¶ 8-9.)  The marital lien had second priority behind the first mortgage on the property.  (*Id.* ¶ 13.)  NSP alleges that its loan officer mistakenly approved the loan on the belief that its mortgage would be second in priority behind the first mortgage, not third priority behind the first mortgage and the marital lien.  (*Id.*)  NSP subsequently increased Schantzen's loan to approximately $80,000 in October 2006.  (*Id.* ¶ 16.)  Schantzen became delinquent on her loan on December 15, 2009.  (*Id.* ¶ 17.)  NSP sent a Notice of Loss to CUMIS in July 2011, and CUMIS denied the claim.  (*Id.* ¶ 18.)

## III.  THE INSURANCE POLICIES

CUMIS issued a credit union package of protection to NSP with a policy period from February 1, 2011, to February 1, 2012.  (Parks Compl. ¶ 23; Answer, Ex. 1 ("Policy") at 3, Feb. 22, 2013, Docket No. 4.)  The Policy contains Mortgage Recording Coverage, which is the subject of the present case.  (Policy at 40-47.)  The Policy's coverage clause provides as follows:

> We will pay you for your "loss" resulting directly from an "employee's" "error or accidental omission" which violates your established and enforced operating procedures in preparing, recording or releasing your security interest in "real estate" that is pledged as collateral on a loan.
>
> We will pay for such "loss" only when you can document to us that the "error or accidental omission" allowed . . . [a]nother entity to gain a superior security interest in the collateral . . . .[1]

(Policy at 41.)   The Policy defines "loss" as "the lesser of" the following:

> 1. "Security value without error or accidental omission" less "security value with error or accidental omission;" or
>
> 2. The principal balance of the loan secured by the "real estate," plus uncollected earned interest to the "date of loss."

(*Id.* at 46.)   The term "security value **without** error or accidental omission" is defined as:

> [T]he market value of the "real estate" as of the "date of loss," less . . . all security interests that would have been superior in the absence of an "employee's" "error or accidental omission," including but not limited to tax liens and security interests recorded before the date of an "employee's" "error or accidental omission."

(*Id.* at 47 (emphasis added).)   When security value without error or accidental omission is zero or negative, there is no covered loss. (*Id.*) The term "security value **with** error or accidental omission" is defined, in relevant part, as the market value, less all security interests that would have been superior in the absence of the error, less "[t]he decrease in value by reason of an 'employee's' 'error or accidental omission' resulting in . . .

---

[1] In addition to providing coverage where the error allows another entity to gain a superior security interest in the collateral, the Policy also provides coverage in three other circumstances that NSP concedes are not present in this case. Those are where the error allows (1) "[t]he mortgagor to transfer ownership of the collateral to another entity free of your security interest"; (2) "[t]he mortgagor to obtain ownership of the collateral free of your security interest"; or (3) "[t]he operation of bankruptcy laws to make your security interest unenforceable." (Policy at 41.)

[a]nother entity gaining a superior security interest in the 'real estate' pledged as collateral." (*Id.* at 46 (emphasis added).)

The Policy provides coverage only when the date of loss occurs during the policy period, and date of loss is defined as "the date as of which there has been no payment of principal for 90 days." (*Id.* at 44.)  The Policy also provides that no legal action may be brought against CUMIS unless the action is brought within three years after the date of the loss.  (*Id.* at 15.)

## ANALYSIS

I.  **STANDARD OF REVIEW**

Reviewing a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the Court applies the same standard as under a motion to dismiss pursuant to Rule 12(b)(6).  *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009).  Therefore, when considering a motion for judgment on the pleadings under Rule 12(c), the Court is required to "'accept as true all factual allegations set out in the complaint' and to 'construe the complaint in the light most favorable to the [plaintiff], drawing all inferences in [the plaintiff's] favor.'"  *Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (quoting *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006)).  Although a complaint need not contain "detailed factual allegations," it must contain sufficient factual allegations "to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In addition to the pleadings, the Court may properly consider materials that are necessarily embraced by

the pleadings.  *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004).

## II.   DECLARATORY JUDGMENT AND CONTRACTUAL CLAIMS

In Count I, NSP seeks a declaratory judgment that the Policy provides coverage for its claims.  Count II alleges that CUMIS breached its contract with NSP when it denied coverage for NSP's claims.  Thus, the declaratory judgment and breach of contract claims both turn on whether the Policy provides coverage for the claims at issue.

### A.   Interpretation of Insurance Policies

The interpretation and application of an insurance policy is a question of law.  *Am. Family Ins. Co. v. Walser*, 628 N.W.2d 605, 609 (Minn. 2001).  An insurance policy is a contract to be judged by the application of the general principles of the law of contracts.  *Waseca Mut. Ins. Co. v. Noska*, 331 N.W.2d 917, 926 (Minn. 1983).  Thus, in interpreting a policy, the Court "must ascertain and give effect to the intentions of the parties as reflected in the terms of the insuring contract."  *Jenoff, Inc. v. N.H. Ins. Co.*, 558 N.W.2d 260, 262 (Minn. 1997).  "[T]he terms of an insurance policy are to be given their ordinary meaning, as well as the interpretations adopted in prior cases . . . ."  *Boedigheimer v. Taylor*, 178 N.W.2d 610, 613 (Minn. 1970).  Moreover, the meaning of the policy is to be determined by looking at the words and phrases of the contract in the context of the contract as a whole, not in isolation.  *Eng'g & Constr. Innovations, Inc. v. L.H. Bolduc Co.*, 825 N.W.2d 695, 705 (Minn. 2013).

"Language in a policy is ambiguous if it is susceptible to two or more reasonable interpretations." *Midwest Family Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, (Minn. 2013). Any ambiguity regarding coverage is resolved in favor of the insured. *Prahm v. Rupp Constr. Co.*, 277 N.W.2d 389, 390 (Minn. 1979). The burden of proof is on the insured to show that a loss is covered under an insurance policy. *See Eng'g & Constr. Innovations Inc.*, 825 N.W.2d at 705.

### B. Declaratory Judgment and Breach of Contract

CUMIS contends that there is no coverage under the Policy for several reasons, including that the decision to give a loan is not part of "preparing a security interest," that no other entity "gained a superior security interest" because of NSP's employees' errors, and that there was no "loss" as it is defined by the Policy. CUMIS also contends that the claim relating to the Parks loan was brought outside of the three-year window required by the Policy. While a number of CUMIS's arguments have potential merit, the Court will focus on the requirement that another entity "gain" a superior security interest as a result of an employee's error. Even assuming that NSP suffered a "loss" under the Policy as the result of an "error or accidental omission" by one of its employees in "preparing a security interest," the Court finds that there is no coverage as a matter of law because under no reasonable interpretation of the word "gain" did another entity gain a superior security interest as a result of NSP's employees' errors.

As noted above, in order to establish that there is coverage, NSP must demonstrate that its employees' errors "allowed . . . [a]nother entity to gain a superior security interest

in the collateral."  Here, the tax lien on the Parks property and the marital lien on the Schantzen property, which were both second in line behind first mortgages on the respective properties, preexisted any errors committed by NSP employees and would have enjoyed the same position with respect to the underlying property whether the errors had occurred or not.  The liens were both superior to NSP's mortgages and there is nothing an NSP employee could have done differently that would have changed the status of the liens.  The holders of the tax and marital liens did not "gain" a superior security interest when NSP approved loans without realizing that those liens existed, thereby becoming third in line.  They were second in line before NSP approved the loans and they were second in line after NSP approved the loans.

   NSP claims that it would not have approved the loans if its employees had not overlooked the tax lien or believed NSP's second mortgage would be superior to the marital lien.  Thus, according to NSP, but for its employees' errors, the other liens would not have been superior to NSP's mortgages because NSP's mortgages would not have existed underneath them.  It is in this sense that NSP claims that the other liens gained a superior security interest over NSP.  While it is a creative attempt to construe the Policy's language in its favor, the Court finds that it would be unreasonable to conclude that the holders of the tax and marital liens **gained** a superior security interest when their position in line was not improved by NSP's employees' errors.  An entity possessing a security interest that has second priority gains nothing when another entity obtains a security interest with third priority.

The Court's conclusion that the Policy unambiguously does not provide coverage is supported by the Policy's definition of "security value with error or accidental omission." That term is defined as:

[T]he market value of the "real estate" as of the "date of loss," less:

1. All security interests that would have been superior in the absence of an "employee's" "error or accidental omission," **including but not limited to tax liens and security interests recorded before the date of an "employee's" "error or accidental omission**;" and

2. The decrease in value by reason of an "employee's" "error or accidental omission" resulting in . . . [a]nother entity gaining a superior security interest in the "real estate" pledged as collateral . . . .

(Policy at 7 (emphasis added).) This definition demonstrates that the Policy separates superior security interests like preexisting tax liens or marital liens from other security interests that later become superior because of an employee's mistake.

Because the Court finds that it is unambiguous that no other entity gained a superior security interest as a result of NSP's employees' errors, the Court will grant CUMIS's motion for judgment on the pleadings on NSP's declaratory judgment claim and breach of contract claim. Further, while extrinsic evidence sometimes provides insight into the intent of parties to an insurance contract, *see Piper Jaffray Cos. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 967 F. Supp. 1148, 1154 (D. Minn. 1997), the Court will not consider such evidence in this case because the Policy's language

unambiguously does not provide coverage, *see Adzick v. UNUM Life Ins. Co. of Am.*, 351 F.3d 883, 887 (8th Cir. 2003).[2]

### C. Implied Covenant of Good Faith and Fair Dealing

NSP contends that CUMIS is liable for "breach of duty of good faith and fair dealing" because it "fail[ed] to honor the Policy and fail[ed] to pay NSP for its loss under the Policy." (Parks Compl. ¶¶ 34-38; Schantzen Compl. ¶¶ 29-33. "Under Minnesota law, every contract includes an implied covenant of good faith and fair dealing . . . ." *In re Hennepin Cnty. 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 502 (Minn. 1995). Minnesota courts have allowed plaintiffs in insurance cases to advance breach of contract and breach of the implied covenant claims simultaneously based on the same conduct. *See Columbia Cas. Co. v. 3M Co.*, 814 N.W.2d 33, 37 (Minn. Ct. App. 2012).

"To allege an implied covenant claim the [plaintiff] need not first establish an express breach of contract claim . . . ." *In re Hennepin Cnty.*, 540 N.W.2d at 503. However, the implied covenant "does not extend to actions beyond the scope of the underlying contract." *Id.* The implied covenant "serves only to enforce existing contractual duties, and not to create new ones." *Watkins Inc. v. Chilkoot Distributing, Inc.*, __ F.3d __, 2013 WL 3368442, at *5 (8th Cir. July 8, 2013).

Although the contours of the implied covenant of good faith and fair dealing are not thoroughly developed, *see Columbia Cas. Co.*, 814 N.W.2d at 40 ("We need not

---

[2] The Court need not rule on the alternative grounds on which CUMIS contends it is entitled to judgment on the pleadings because the Court's conclusion that no other entity gained a superior security interest as a result of NSP's employees' errors is dispositive.

determine whether Minnesota's recognition of the implied covenant of good faith and fair dealing is limited to unjustifiable hindrance of a party's performance under the contract."), the Court finds that NSP's claim fails as a matter of law.  NSP's sole allegation is that CUMIS failed to act in good faith because it did not pay NSP for its losses.  NSP points to no other actions or omissions by CUMIS that might amount to a breach of the implied covenant.

NSP's claim is premised entirely on the assumption that it was entitled to coverage under the Policy, but the Court concluded above that NSP's losses are not covered by the Policy as a matter of law.  It would be incongruous to find that CUMIS failed to act in good faith simply because CUMIS failed to provide coverage when CUMIS was correct that the claim was not covered by the Policy.  Therefore, the Court will grant CUMIS's motion for judgment on the pleadings on NSP's implied covenant of good faith and fair dealing claim.

## III.  EQUITABLE CLAIMS

In addition to its declaratory judgment and contractual claims, NSP brings three equitable claims – promissory estoppel, equitable estoppel, and unjust enrichment.  The equitable claims are premised entirely on the assumption that CUMIS has failed to comply with the terms of the Policy by denying coverage in the present case.  There are no factual allegations beyond the denial of coverage to support any of the three claims.

### A.   Promissory Estoppel

Under Minnesota law, the elements of promissory estoppel are (1) a clear and definite promise; (2) the promisor intended to induce reliance and such reliance occurred; and (3) the promise must be enforced to prevent injustice. *Ruud v. Great Plains Supply, Inc.*, 526 N.W.2d 369, 372 (Minn. 1995). "Where facts are not in dispute . . . , whether they rise to the level of promissory estoppel presents a question of law. *Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 746 (Minn. 2000). "[P]romissory estoppel only applies where no contract exists." *Banbury v. Omnitrition Intern., Inc.*, 533 N.W.2d 876, 881 (Minn. Ct. App. 1995) (citing *Sacred Heart Farmers Co-op Elevator v. Johnson*, 232 N.W.2d 921, 923 n.1 (Minn. 1975)).

NSP alleges that the Policy constituted a promise by CUMIS to cover losses pursuant to the terms set forth in the Policy. In other words, NSP explicitly alleges that its contract with CUMIS contains the promise it seeks to enforce. NSP does not allege that CUMIS made any relevant promises other than those contained in the Policy. Because NSP's promissory estoppel claim is premised entirely on its existing contract with CUMIS, the Court will grant CUMIS's motion for judgment on the pleadings on NSP's promissory estoppel claim. *Banbury*, 533 N.W.2d at 881.

### B.   Equitable Estoppel

Under Minnesota law, a claim for equitable estoppel must satisfy three elements: "(1) that promises or inducements were made; (2) that [plaintiff] reasonably relied upon the promises; and, (3) that [plaintiff] will be harmed if estoppel is not applied." *Hydra-*

*Mac, Inc. v. Onan Corp.*, 450 N.W.2d 913, 919 (Minn. 1990).  NSP alleges that the Policy was a representation that CUMIS would conduct business with NSP pursuant to the terms as set forth therein.  As with NSP's promissory estoppel claim, the equitable estoppel claim is premised on the erroneous assumption that CUMIS has failed to adhere to the terms of the Policy by denying coverage.  Because the Court concluded above that NSP's assumption is incorrect and there is, in fact, no coverage, the Court will grant CUMIS's motion to dismiss NSP's equitable estoppel claims.  *Cf. Shannon v. Great Am. Ins. Co.*, 276 N.W.2d 77, 78 (Minn. 1979) ("The doctrine of estoppel may not be used to enlarge the coverage of an insurance policy.")

### C. Unjust Enrichment

Under Minnesota law, "[t]o establish an unjust enrichment claim, the claimant must show that the defendant has knowingly received or obtained something of value for which the defendant in equity and good conscience should pay."  *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012) (internal quotation marks omitted).  NSP's unjust enrichment claim is premised solely on CUMIS's refusal to provide coverage for NSP's claims in the present case.  Because the Court has concluded that there is no coverage under the Policy for the claims, there is no injustice in CUMIS retaining premiums and refusing to provide coverage for the claims.  Equity does not require that CUMIS provide coverage beyond the terms of the Policy.  Therefore, the Court will grant CUMIS's motion to dismiss NSP's unjust enrichment claim.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's motion for judgment on the pleadings [Docket No. 6] in Civil No. 13-0385 is **GRANTED**.

2. Defendant's motion for judgment on the pleadings [Docket No. 7] in Civil No. 13-0387 is **GRANTED**.

3. Plaintiff's claims in Civil No. 13-0385 and Civil No. 13-0387 are **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: August 9, 2013  
at Minneapolis, Minnesota.

_____s/ John R. Tunheim_____  
JOHN R. TUNHEIM  
United States District Judge